[Dunaway v. Roden.]

# Dunaway v. Roden.

Assumpsit.

(Decided February 1, 1916. 71 South. 70.)

1. **Contracts; Modification; Jury Question.**—Where the action was for compensation for boring a well, the question whether it was the implied intention of the parties, after modifying the original contract, that defendant should still pay for the well casing, and for the removal of plaintiff's well boring machinery as stipulated in the original contract, although as to such matters what was said at the time of the modification, was for the jury under the evidence in this case.

2. **Same; Instruction.**—Where the original contract provided that defendant should give plaintiff a mule, pay for the well casing, and the removal of plaintiff's well boring machinery, and this was subsequently modified to provide that plaintiff should receive a cash payment in accordance with the number of feet bored, a charge asserting that if the jury believed that plaintiff and defendant first made a contract for plaintiff to bore a well for a mule, and that afterwards a new contract was made, whereby the old one was abandoned, plaintiff could not recover for the moving of his machinery, or for casing the well, provided you find that plaintiff did not comply with the new contract, was not only calculated to mislead as to whether the terms of the original contract were abrogated by the new agreement, but was positively confusing.

3. **Contracts; Modification.**—Parties to an executory contract may alter it at pleasure, and in any particular they see fit, upon no other consideration than mutual consent.

4. **Same; Compensation; Recovery.**—In an action for compensation for boring a well, and the contract for the work, as modified, changed the stipulation as to the quantity of water plaintiff was to get, the changed stipulation obligating him only to bore the well to such a depth as to reach water, which he did, plaintiff could recover on a special count setting up the modified contract.

5. **Same; Terms; Jury Question.**—The question whether the contract obligated plaintiff merely to get water, or to get enough water to supply defendant's family and live stock, was for the jury under the evidence in this case.

6. **Same; Performance; Jury Question.**—Under the evidence in this case a question as to whether the twelve or fourteen two-gallon buckets of water which the well produced every twelve hours met the requirements of the contract, was a question for the jury.

7. **Same; Construction.**—It is only when a contract is in writing or its terms are not in dispute that its construction is for the court.

8. **Work and Labor; Common Counts.**—Where plaintiff contracted to bore a well for defendant, the well to produce enough water to supply defendant's family and live stock, which it failed to do, but after plaintiff

[Dunaway v. Roden.]

reached water defendant told him to work one more day and quit, plaintiff could recover on the common count for work and labor done at defendant's request.

9. **Same.**—Although the rule is that where there is an express contract an action cannot be predicated on an implied one, but recovery must be had, if at all, on the express contract, the rule is subject to the exception that where the express contract has been fully performed and nothing remains to be done but the payment of the money a plaintiff can recover under the common counts, or under a special count based on the express contract, or both.

10. **Contract; Right of Party to Stop Work.**—Where the party who had contracted for boring a well agreed to pay therefor so much per foot, and before the well was bored to such a depth as to produce the amount of water called for by such a contract, desired to stop the further progress of the work, he had the right to do so if the contractor consented, and thus effect the modification of the contract by mutual consent.

11. **Same.**—Under the evidence in this case it was a question for the jury to determine whether the contractor was told by the other party, after water was reached, to work one more day and quit.

12. **Work and Labor; Recovery; Modification.**—Where the contractor was directed by his employer, after reaching water, to bore one more day and quit, such contractor could recover under a common count for work and labor done at request on the modification of the contract by mutual consent before full performance, irrespective of an acceptance of the work.

13. **Appeal and Error; Harmless Error; Rule 45.**—Where the original contract was modified, and as modified, the terms of the contract were in dispute, the erroneous admission of evidence tending to show the value of the mule which defendant had originally agreed to pay for the work, does not justify a reversal, as rule 45, Supreme Court Practice, contemplates that a reversal shall not be had unless the error injuriously affects the party complaining.

14. **Contracts; Action on; Evidence.**—Where the original contract which provided for the payment for the work by giving a mule was modified to call for cash payments at so much per foot, but its terms were otherwise in dispute, evidence for plaintiff as to the value of the mule mentioned in the original contract was admissible as a circumstance to aid the jury in determining what the modified contract actually was, and its proper determination and interpretation.

15. **Appeal and Error; Review; Reservation of Grounds.**—Where the motion to exclude competent testimony failed to raise the point that it was not responsive to the question calling it forth, the motion being merely general and not specifying any grounds, the point that the answer was unresponsive could not avail the moving party on appeal.

(Brown, J., dissents on rehearing.)

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

(This cause was reviewed by the Supreme Court, on certiorari to the Court of Appeals, and the writ was denied. See *Ex parte Dunaway,* 197 Ala., 72 South. 1016.—Reporter.)

[Dunaway v. Roden.]

Action by J. H. Roden against A. M. Dunaway. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts sufficiently appear from the opinion.

The following charges were refused to defendant:

(6) If you find from the evidence that there was an entire contract to bore the well, and that plaintiff did not perform the contract in full, but only in part, then your verdict should be for defendant.

(7) If you believe plaintiff and defendant first made a contract for plaintiff to bore the well for a mule, and that afterwards a new contract was made for the boring of the well, in lieu of the old contract, and if thereby the old contract was abandoned, then I charge you that plaintiff cannot recover anything in this case, either for moving the machinery or for furnishing casing for the well, provided you find plaintiff did not comply with the new contract as made.

(8) If you are reasonably satisfied from the evidence that, under the contract made to bore the well, it was stipulated and agreed that plaintiff was to furnish enough water in said well to supply defendant's family and enough for his stock, and that plaintiff did not do this, then, if this is true, plaintiff is not entitled to recover anything in this case for boring said well.

OSCEOLA KYLE, for appellant. TIDWELL & SAMPLE, for appellee.

THOMAS, J.—Action by appellee, as plaintiff below, against appellant, as defendant below, for compensation for boring a well.

The complaint, to which no demurrer was filed, contained four counts, but the second was eliminated by the giving of the affirmative charge for defendant. The refusal of the court to give such charge for defendant as to each of the other counts is the principal error relied on for a reversal.

The first and third counts sought a recovery under a special contract for boring said well, the only difference between the two being that the latter more fully set out the contract; while the fourth count sought a recovery under the common count for work and labor done at plaintiff's request in boring said well, etc. Defendant pleaded the general issue with leave to give in evidence any matter that might be specially pleaded. The con-

tract relied on by plaintiff for recovery was a parol one. He testified:

"In July, 1912, I made a contract with defendant to bore him a well, for which he was to give me a mule [which was shown to be worth $125.] The contract was that I was to bore the well for the said mule and defendant was to pay the cost [$3] of moving my well-boring machinery to his place where the well was to be bored, and was to furnish the casing for said well [shown to have been put in by defendant at a reasonable cost of $2.50]. I was to bore the well such a depth as would furnish water sufficient for defendant's use at his house for his family and for his live stock that was kept on his premises. * * * After I moved my well-boring machinery to defendant's premises for the purpose of boring the well and had set up the machinery, I made a new contract with defendant for boring the well. Defendant informed me that, after having made the first agreement about boring the well, he had sold the mule he was to give me for said work, but that he presumed I would just as soon have the money as the mule. To this I assented, and it was then agreed that I was to bore the well and was to receive as compensation 50 cents per foot for boring through dirt and $1 per foot for boring through rock. Nothing was said in this last agreement about the quantity of water I was to furnish. It was simply agreed that I was to get water. I bored the well 72 feet in depth, and 6 of this was through dirt and sixty-six of this was through rock. I bored until I struck water. The day before I quit work on the well, I saw the defendant, * * * and he paid me $10, and he told me that the well did not furnish sufficient water, and to work one more day on it and quit. When this new contract was made, my well-boring machinery had been set up on defendant's premises preparatory to begin boring under the original contract. Under the new contract, nothing was said about defendant's paying for the casing of the well, or for the removal of the machinery to his premises."

The defendant insists that under this evidence he was entitled to the affirmative charge as to count 3 of the complaint on account of an alleged variance between allegation and proof, because the count in describing the special contract sued on, which was the new or modified contract, alleged that under it defendant not only was to pay plaintiff 50 cents per foot for dirt and $1 per foot for rock bored through in sinking the well, but

was also to pay for the casing of the well and for the cost of removing plaintiff's machinery to the place of boring, while the testimony as set out, it is insisted, afforded no evidence whatever that defendant was to pay for the latter two items.

(1) We cannot so agree. The facts and circumstances are such that the jury might infer that it was the implied intention of the parties that under the new contract—the contract as modified—the defendant was still to pay for the casing of the well and for the removal of the machinery, though nothing was in fact said about either of these things at the time of the modification.

The testimony of the defendant as to the original contract between the parties and as to the facts and circumstances under which it was modified coincides with that of plaintiff. Both agree that under the new or modified contract plaintiff was to get for boring the well, not a mule, as first agreed, but 50 cents per foot for dirt and $1 per foot for rock bored through in sinking the well; and both agree that at the time of this new agreement nothing was said about defendant's paying for the casing of the well and the removal of plaintiff's machinery, as had been formerly agreed to—that is, under the contract as originally made. What is to be inferred from their silence as to these matters? May it not be reasonably implied from their failure to make any change in these stipulations of the old contract, which they were merely modifying, that they intended them to remain as there agreed? In other words, was it not the implied understanding that the old contract was to stand except as to particulars where a change was expressly agreed on?

(2, 3) As to whether it was or not was a question for the jury, and the court did not err in refusing the affirmative charge as to count 3 on any theory of a variance. Nor did the court err in refusing written charge numbered 7 requested by defendant, and which asserted that: If the jury believed that "plaintiff and defendant first made a contract for plaintiff to bore the well for a mule, and that afterwards a new contract was made for boring the well in lieu of the old contract, and if thereby the old contract was abandoned, then plaintiff could not recover anything either for moving his machinery or for casing the well, *provided you find that plaintiff did not comply with the new contract.*"

The charge, we think, was not only calculated to mislead the jury for reasons just adverted to, but was positively confusing

by. reason of the concluding paragraph in it, as above italicized. On this account, the charge, as applied to the evidence, is susceptible of the construction that it meant to assert that, although the jury might believe that under the original contract the defendant was to pay for moving plaintiff's machinery and for casing the well, yet, if they further believed that the contract was abandoned and a new contract entered into in lieu of it, which did not require the defendant to pay for moving plaintiff's machinery and casing the well, the plaintiff could not recover anything for either of these things; "provided the jury believed that plaintiff did not comply with the new contract." Upon the hypothesis stated in the charge, the plaintiff was not entitled to recover anything for moving his machinery and casing the well, even though he had complied with the new contract; and yet the charge, by the concluding proviso mentioned, implies that he would, provided he complied with the new contract. The lower court cannot be put in error for refusing a charge which incorrectly states the law, or which is confusing, although its only fault in this particular lies in the fact that it is too favorable to the opposite party.—6 Mafy. Dig. 11, par. 17.

(4) Parties are at liberty to alter or change an executory contract at their pleasure and in any particular they see fit upon no other consideration than mutual assent.—2 Mayf. Dig. 797, § 48.

That the original contract—the terms of which were undisputed—was altered or changed, both parties agree. The extent of that modification only was in dispute, which was clearly a question for the jury to determine.—*Swanner v. Swanner*, 50 Ala. 66.

The plaintiff also testified, as before seen, that, at the time the new contract was made, "it was simply agreed that he was to get water;" while the defendant testified that, at the time of the making of the new contract, the plaintiff then expressly again agreed to bore the well deep enough to furnish a sufficient supply of water for defendant's family and live stock, and that by actual test the well bored by plaintiff furnished only 12 or 14 two-gallon buckets ever 12 hours, which was totally insufficient for the purpose mentioned.

(5-8) If the jury believed the testimony of the plaintiff to the effect that under the new contract the stipulations of the old contract as to the quantity of water he was to get were ex-

pressly changed, and that under the new contract he was only to bore the well to such a depth as to reach water, then plaintiff was entitled to recover under the special count; provided the jury believed the water gotten was sufficient to meet the requirements of the new contract under plaintiff's version of it. We cannot say as a matter of law, as it is insisted by appellant we should say, that the amount of water procured by plaintiff in boring the well, to-wit, 12 or 14 two-gallon buckets every 12 hours, was not sufficient to meet the requirements even of plaintiff's version of the new contract, to the effect that under it he was only "to get water." In other words, it is insisted that, in the light of the situation and surroundings of the parties at the time of employing those words in the contract—that is, that plaintiff was to get water—we should interpret those words to mean that plaintiff was to get water sufficient to supply the family and stock of the defendant; and that, since the evidence discloses that the amount actually gotten was inadequate to that end, we should hold that the defendant was entitled to the affirmative charge, upon the theory that the plaintiff had not performed the contract sued on by him, even if we accept as true his own evidence as to its terms. Under the facts and circumstances of this case, however, as pointed out, we think it was the province of the jury, and not the court, to determine not only the question as to whose version of the terms of the contract was correct (whether that of the plaintiff or that of the defendant) but, in the event they found the plaintiff's version to be correct, and that the contract bound him only to get water, to also determine whether the amount of water actually gotten (12 or 14 two-gallon buckets every 12 hours) was sufficient to meet that requirement. What the parties meant and understood by the employment of these terms, if they were employed in the contract, was for the jury, and not the court, to say, after considering all the facts and circumstances of the case. It is only when the contract is in writing, or when its terms are not in dispute, that its construction is for the court.— *McFadden v. Henderson,* 128 Ala. 221, 29 South. 640.

(9) But even if the jury did not believe plaintiff's version of the new contract, but believed defendant's version, and also believed that the water gotten was not sufficient to supply defendant's family and stock, yet, if they believed plaintiff's testimony to the effect that after he reached water defendant told him to work one more day and quit, then he would also be entitled to

recover.—*Mansfield v. Morgan,* 140 Ala. 567, 37 South. 393. Hence the court did not err in refusing the affirmative charge as to any of the counts, either the counts 1 and 3, which were special counts, as before said, based on an express contract, or the count 4, which was the common count for work and labor done.

(10) While it is true that where there is an express contract the plaintiff cannot resort to an implied one, but must recover, if at all, on the express agreement, yet this rule is subject to the exception that where the express contract has been fully performed, and nothing remains to be done but the payment of the price in money, then the plaintiff can recover either under the common counts or under a special count on the express contract, or under both.—5 Mayf. Dig. 206, § 22, and cases cited.

(11-13) Charges 6 and 8 were properly refused, for even though the new contract was as defendant claimed, and even though plaintiff did not fully perform it, yet, if defendant told plaintiff, as plaintiff swears he did, to work one more day and quit, then defendant would be liable.—*Mansfield v. Morgan, supra.* The character of the new or modified contract between the parties was such that, the deeper the plaintiff bored the well, the more expensive it would be to the defendant, who was to pay for the work, not a lump sum, but according to the number of feet bored; and if, before the plaintiff bored the well to such a depth as to procure the amount of water called for by the contract even under defendant's version of it, the defendant wanted to stop plaintiff in the work, he had a perfect right to do so, provided plaintiff consented. This would be again changing the contract by mutual consent. Plaintiff testified, as pointed out, that defendant told him, after water was reached in the well, to work one more day and quit. If this be true, which was a question for the jury, then the plaintiff was entitled to recover under the common count found in the complaint. Such a recovery would not, as appellant seems to think, have to be predicated upon an acceptance by defendant of the work, but upon a change or modification of the new contract by mutual consent before it was fully performed, which is entirely permissible, as shown in the authorities cited in the opinion.

(14, 15) The fact that the court permitted the plaintiff to prove the value of the mule that was, under the first contract between the parties, to be given plaintiff by defendant in return for boring the well, we cannot say, if error, that it was injurious;

[Dunaway v. Roden.]

which we must be able to say before we would be authorized to reverse the case under the new rule of our Supreme Court.—Rule 45 (175 Ala. xxi). However, we are not only of opinion that there was no injury in admitting such proof, but also that there was no error, as we think the jury had a right to know what the first contract was—the consideration therefor, that is, not only that the consideration was a mule, but the value of it—as a circumstance to aid them (the jury), for whatever it was worth, in determining what the modified contract actually was and its proper interpretation. A knowledge by the jury of what the first contract was was certainly essential to their understanding of the situation of the parties and what they had in mind when they entered into an agreement to change or modify that contract. All the evidence as to it was admitted without objection from defendant, who also testified as a witness for himself to its terms. The only objection was that the court permitted plaintiff to prove the value of the mule that was to be given by defendant under the old contract for boring the well. We do not think that this should reverse the case for reasons stated, even if error.

(16) The court declined to exclude, on motion of defendant, an answer of a witness for plaintiff to the effect that defendant told him (witness) that he (defendant) thought that with the well bored by plaintiff, and with another well he (defendant) had, he (defendant) could make out. It is insisted that this answer of the witness should have been excluded because it was not responsive to the question from plaintiff's counsel which called it forth. Granting that it was not responsive, no ground of the motion to exclude raised this point; but the motion was merely a general one not specifying any grounds. Consequently, the point now made can avail appellant nothing.—*Eason v. Isbell,* 42 Ala. 456; *Riley v. State,* 88 Ala. 193, 7 South. 149.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.

ON REHEARING.

BROWN, J.—On re-examination of this case on rehearing, I entertain the opinion, on the plaintiff's own evidence, which is without dispute on this point, that the evidence as to the first con-

tract was wholly irrelevant to the issues in this case, and that contract should in no way influence the result. The plaintiff testified in his own behalf (Record, p. 9) :

"Under the first contract that I made with the defendant, I was to receive a mule for boring the well, and defendant was to pay for moving my machinery outfit to his premises and was also to pay for the casing of the well. We abandoned this old contract and made a new one, defendant agreeing to pay me 50 cents per foot for dirt and $1 per foot for rock. It was under this contract I bored the well. When the last contract was made, my well-boring machinery had been set up on defendant's premises preparatory to begin boring under the original contract. Under the new contract, nothing was said about defendant paying for the casing of the well or for the removal of the machinery to his premises."

This testimony of the plaintiff is unmistakably conclusive in establishing the fact that the first contract was abandoned and a new contract entered into covering the same subject-matter between the same parties .(L. & N. R. R. Co. v. Bontrager, 186 Ala. 186, 65 South. 28), and the acceptance of the new contract by the parties by operation of law extinguished the former contract (Otis v. McMillan & Son [headnote 3] 70 Ala. 46).

This evidence clearly does not show a mere modification of the first contract, but an abandonment of it by mutual agreement of the parties, and leaves no room for construing the new contract as a modification of the old. It is elementary that it is not the office of the law or the courts to make contracts for parties, but to enforce them as made by the parties. Therefore the evidence as to the value of the mule was wholly immaterial and should have been rejected on the appellant's objection.

If the facts hypothesized in charge 7 were found by the jury from the evidence, the plaintiff was not entitled to recover, and the refusal of this charge was erroneous. The only criticism to which it was subject is that it was too favorable to the plaintiff, in that it required the jury to find that the plaintiff had not complied with the last contract. No doubt, in fixing the price to be paid in the new contract, the fact that the machinery had already been moved and set down was taken into consideration by the parties.

For these errors, the judgment should be reversed.